UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>CLAYTON HIGH WOLF JR., a/k/a "Bubz,"<br>Defendant. | 5:25-CR-50180-RAL<br><br>OPINION AND ORDER ON MOTIONS IN LIMINE |

A grand jury indicted Clayton High Wolf, Jr., a/k/a "Bubz," on one count of conspiracy to distribute 50 grams of methamphetamine (actual). Doc. 1. High Wolf has pleaded not guilty to the charged offense and has exercised his right to a jury trial. On July 30, 2026, the Honorable Camela C. Theeler held a pretrial conference and motion hearing, where she heard argument on the various pending motions. Judge Theeler recently reassigned the case to the undersigned for jury trial, Doc. 57. This Court now formalizes the previous rulings and addresses two subsequently filed motions.

## I. Legal Standard

Rulings on motions in limine are by their nature preliminary. United States v. Spotted Horse, 916 F.3d 686, 693 (8th Cir. 2019). They "developed pursuant to the district court's inherent authority to manage the course of trials," Luce v. United States, 469 U.S. 38, 41 n.4 (1984), and are "specifically designed to streamline the presentation of evidence and avoid unnecessary mistrials," Spotted Horse, 916 F.3d at 693. This practice helps safeguard the jury from hearing evidence so prejudicial that its mention could not be remedied through a corrective instruction. Motion in limine, Black's Law Dictionary (11th ed. 2019). Rulings on motions in limine

necessarily occur before the nature and relevance of the evidence can be placed in full context. See Spotted Horse, 916 F.3d at 693. Therefore, a district court retains the authority to revisit and change its rulings based on how the case unfolds. Luce, 469 U.S. at 41-42. If this Court grants a motion in limine to exclude certain information, that information must not be mentioned during voir dire, opening statements, questioning or answering by witnesses, or closing arguments, unless counsel outside the hearing of the jury obtain a contrary ruling.

## II. Discussion

### A. The United States' Motions in Limine

The United States' Motions in Limine, Doc. 40, has nine subparts and seeks (1) to exclude hearsay statements of a defendant offered by a defendant; (2) to prevent reference to penalty and punishment; (3) to preclude mention of how felony charges may adversely affect the defendant's life; (4) to prevent opining on the guilt or innocence of the Defendant; (5) to exclude reference to matters required to be raised by pretrial motion under Fed. R. Crim. Pro. 12(b)(3); (6) to preclude reference to the United States' charging decisions in this matter; (7) to permit Bureau of Indian Affairs Special Agent Melvin Rossman to sit at counsel's table during trial: (8) to prevent reference to witnesses who do not testify; and (9) to exclude evidence or argument relating to the jury's power of nullification. Each subpart is addressed below.

#### 1. Hearsay statements of a Defendant Offered by a Defendant

Subpart one seeks an order in limine precluding High Wolf, defense counsel, and any witness from introducing, through his witnesses or others, prior statements by himself. The United States argues that allowing High Wolf to put his own statements in through other witnesses denies the United States the right of cross-examination of the defendant. In affirming the exclusion of a defendant's prior statement, the Eighth Circuit highlighted that the defendant had not taken the stand and was therefore not subject to cross examination, and that it could not "think that the

privilege against self-incrimination extends so far as to allow a defendant's statements to be admitted without also allowing the government a chance to explore the facts surrounding them for motive and other relevant matter." United States v. Greene, 995 F.2d 793, 799 (8th Cir. 1993). See also United States v. Love, 521 F.3d 1007, 1009 (8th Cir. 2008) (affirming where the district court sustained an objection to defense counsel's attempt to introduce defendant's exculpatory statement through law enforcement agent's testimony); United States v. Sadler, 234 F.3d 368, 372-73 (8th Cir. 2000) (affirming where the district court excluded the defendant's exculpatory prior statements after defense counsel attempted to introduce these statements through the testimony of defendant's former lawyer). This Court grants subpart one of the United States' Motions in Limine subject to revisiting the ruling if there is good cause to do so. This ruling does not impede High Wolf from using Fed. R. Evid. 106 to introduce what in fairness ought to be considered to understand an alleged statement made by High Wolf.

**2. Reference to Penalty or Punishment**

Under subpart two, the United States moves to preclude High Wolf, his attorney, and any witness from referring to the possible penalty or punishment High Wolf will face if convicted of the crime charged. The United States argues that permitting the jury to hear information about what penalty or punishment High Wolf faces would be improper and would only confuse the jury. "It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." Shannon v. United States, 512 U.S. 573, 579 (1994) (cleaned up and citation omitted). The jury's role "is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." Id. "[P]roviding jurors sentencing information invites them to ponder matters . . . not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. (citation omitted). The jury must be able to carry out its role uninfluenced by the

consequences of its verdict. See id. at 578 (citation omitted); United States v. Fisher, 10 F.3d 115, 121 (3d Cir. 1993) ("[F]ederal criminal juries are almost never instructed concerning the consequences of verdicts."). Accordingly, this Court grants the United States' Motions in Limine as to subpart two. There shall be no reference to or comment on the possible penalty or punishment High Wolf could receive if convicted. This does not, however, preclude High Wolf from referring to the charge as a "serious offense" or even sparingly as a "felony" offense.

### 3. How Felony Conviction May Affect Defendant

The third subpart of the United States' motions in limine seeks to prohibit mention that the charge is a felony or how a felony conviction adversely affects a defendant's career, plans, education or future. This Court ruled within subpart 2 above that passing references to the charge being serious or a felony are permissible. However, particularly here where High Wolf has a prior felony conviction, evidence relating to how a felony conviction may affect High Wolf's life appears to be of dubious relevance under Fed. R. Evid. 401 and substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury under Fed. R. Evid. 403. High Wolf did not oppose this subpart, and subpart three of the United States' Motions in Limine is granted.

### 4. Opining on Guilt or Innocence

Under subpart four, the United States requests an order barring High Wolf, his attorney, and any witnesses from expressing their opinion about the guilt or innocence of High Wolf. Evidence expressing an opinion on a defendant's innocence or guilt "invades the province of the jury" and is inadmissible. See United States v. Thirion, 813 F.2d 146, 156 (8th Cir. 1987) (reasoning that a government witness's opinion that defendant was innocent "is not truly exculpatory evidence because it is inadmissible as it invades the province of the jury"); Wessin v. United States, 164 F.2d 50, 55 (8th Cir. 1947) ("And any such unnecessary opinion evidence in a

criminal case that will inescapably be a plain expression of the witness's opinion of the defendant's guilt . . . should be scrupulously avoided.") Therefore, and because High Wolf's attorney requested that the ruling be reciprocal, no witness for High Wolf or the United States may opine on the guilt or innocence of High Wolf. This, of course, does not preclude High Wolf from potentially testifying about his innocence, nor prevent his attorney from asserting actual innocence or arguing that the evidence presented at trial does not establish guilt beyond a reasonable doubt.

**5. Reference to Matters Required to be raised by Pretrial Motion (Fed. R. Crim. P. 12(b)(3))**

Next, the United States seeks to prohibit High Wolf from referencing matters that should have been brought before this Court by pretrial motion under Fed. R. Crim. P. 12(b)(3). In relevant part, Rule 12(b)(3) provides that:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
> (A) a defect in instituting the prosecution, including:
> (i) improper venue;
> (ii) preindictment delay;
> (iii) a violation of the constitutional right to a speedy trial;
> (iv) selective or vindictive prosecution; and
> (v) an error in the grand-jury proceeding or preliminary hearing;
> (B) a defect in the indictment or information, including:
> (i) joining two or more offenses in the same count (duplicity);
> (ii) charging the same offense in more than one count (multiplicity);
> (iii) lack of specificity;
> (iv) improper joinder; and
> (v) failure to state an offense;
> (C) suppression of evidence;
> (D) severance of charges or defendants under Rule 14; and
> (E) discovery under Rule 16.

Additionally, although not explicitly listed under Rule 12(b)(3), a defendant's argument that law enforcement engaged in "outrageous government conduct"[1] is a question of law and

[1] Outrageous governmental conduct refers to "conduct of law enforcement agents [that] is so outrageous that due process principles would absolutely bar the government from invoking judicial

therefore must be "raised as a pre-trial motion to dismiss the indictment." United States v. Nguyen, 250 F.3d 643, 645–46 (8th Cir. 2001) (stating that the failure to file a pre-trial motion to dismiss the indictment based on outrageous government conduct "waives the issue" (citing United States v. Henderson-Durand, 985 F.2d 970, 973 n.4 (8th Cir. 1993))); see also United States v. Duncan, 896 F.2d 271, 274–75 (7th Cir. 1990) (agreeing "with the Second Circuit that an outrageous governmental conduct defense must be made the subject of a pre-trial motion" (citing United States v. Nunez-Rios, 622 F.2d 1093, 1098 (2d Cir. 1980)).

Unless otherwise set by the court, the deadline to file motions under Rule 12(b)(3) is the start of trial. Fed. R. Crim. P. 12(c)(1), (c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely."); see United States v. Trancheff, 633 F.3d 696, 697 (8th Cir. 2011). In this case, the deadline for filing such motions has passed. Doc. 25. A party's failure "to [timely] file a pretrial motion by the deadline" constitutes a waiver of that issue. Trancheff, 633 F.3d at 697. Although a court has the discretion to excuse a waiver and review an untimely filed pretrial motion, id., the party seeking the court's review must show good cause, meaning they "must show both cause and prejudice." United States v. Mayer, 63 F.4th 680, 683 (8th Cir. 2023) (citation omitted). Thus, absent good cause shown, High Wolf may not raise or argue a defense, objection, or request enumerated under Rule 12(b)(3) at trial.

**6. Reference to Government's Charging Decisions in This Matter**

The United States requests an order preventing High Wolf, defense counsel, and any

---

processes to obtain a conviction." United States v. Russell, 411 U.S. 423, 431–32 (1973). The United States Court of Appeals for the Eighth Circuit has stated that "[t]he level of outrageousness needed to prove a due process violation is 'quite high,' and the government's conduct must 'shock the conscience of the court.'" United States v. Hunt, 171 F.3d 1192, 1195 (8th Cir. 1999) (quoting United States v. Pardue, 983 F.2d 835, 847 (8th Cir. 1993)).

witness from making direct or indirect reference to the United States' charging decision in this matter. References to the United States' charging decisions generally offer "minimum probative value" and are typically "outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury." United States v. Noske, 117 F.3d 1053, 1058 (8th Cir. 1997) (affirming district court's exclusion of IRS agent's recommendation against prosecuting defendant). See also United States v. Reed, 641 F.3d 992, 993–94 (8th Cir. 2011) (collecting cases where other courts of appeal upheld exclusion of evidence of prior charging decisions);

This Court grants subpart six of the United States' Motions in Limine. This, of course, does not impede High Wolf from attacking the credibility of the prosecution witnesses or contesting the evidence presented in the case.

**7. Request for Investigator to Sit at Counsel Table**

Subpart seven requests that BIA Special Agent Melvin Robinson be allowed to sit at counsel table during trial as the designated case agent. This Court grants subpart seven of the United States' Motions in Limine.

**8. Reference to Witnesses Who Did Not Testify**

In subpart eight of its motions in limine, the United States seeks to prohibit High Wolf, his counsel or any witness from commenting on the failure of the United States to call a witness. High Wolf did not object to this motion, so it is granted with one qualification.

High Wolf's counsel can argue on closing that there was insufficient proof to find High Wolf guilty beyond a reasonable doubt and point to shortcomings in the evidence presented by the United States, including an absence of adequate witness testimony. But if High Wolf's counsel argues about an absent witness or a witness that should have been called, the United States on rebuttal argument may advise the jury that a defendant has the ability to subpoena and call witnesses. United States v. Ziesman, 409 F.3d 941, 954 (8th Cir. 2005); United States

v. Flynn, 196 F.3d 927, 930-31 (8th Cir. 1999). No party is allowed to speculate about what a non-witness might know or might have said if called or argue that any inference should be drawn from the failure to call of a witness equally available to each party. See United States v. Iredia, 866 F.2d 114, 118 (5th Cir. 1989).

**9. Jury Nullification**

Subpart nine seeks to prevent High Wolf, defense counsel, and any witness from making direct or indirect reference to jury nullification. Such information is not relevant to High Wolf's guilt or innocence. See United States v. Thomas, 116 F.3d 606, 615 (2d Cir. 1997) ("[T]he power of juries to 'nullify' or exercise a power of lenity is just that – a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent."). This Court grants subpart nine of the United States' Motions in Limine.

**B. High Wolf's Motions in Limine**

**1. To Prohibit Hearsay Statements of Alleged Co-Conspirators**

High Wolf's first motion in limine seeks to prohibit the United States "from bringing before the jury any purported hearsay statements of alleged co-conspirators, until the government has shown, at a hearing outside the presence of the jury, and by a preponderance of the evidence, that a conspiracy existed to which the Defendant and the declarant were both parties, and that the statement was made in furtherance of that conspiracy." Doc. 29 at 1. At the pretrial conference, however, High Wolf's attorney described the motion as designed to prevent a case agent from testifying about what co-conspirators said, and described that as the main crux of the motion.

At the pretrial conference and motion hearing, Judge Theeler held her ruling on this motion in abeyance. It is easy to rule that a government agent cannot testify (unless as

impeachment testimony or for non-hearsay purposes) about what alleged co-conspirators said. Of course, "[o]ut of court statements offered to prove the truth of the matter asserted are inadmissible hearsay." United States v. Meeks, 756 F.3d 1115, 1119 (8th Cir. 2014) (citing Fed. R. Evid. 801(c), 802). To deal with co-conspirator statements generally, this Court will apply Fed. R. Ev. 801(d)(2)(E) and the procedure endorsed in United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978). "It is well-established that an out-of-court declaration of a coconspirator is admissible against a defendant if the government demonstrates (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." Bell, 573 F.2d at 1043. In Bell, the Eighth Circuit established a procedure by which a court should address evidence offered pursuant to the exception in Rule 801(d)(2)(E) during a criminal trial. Bell, 573 F.2d at 1044. After a timely objection by the defense, the district court should

> provisionally admit[] the statements and advise[] the parties, on the record at a side-bar conference, that the statements [are] admitted subject to defendant's objection, that the government [is] required to prove by a preponderance of the evidence that the statements were made during the course and in furtherance of the conspiracy, that the court will make an explicit determination as to admissibility at the conclusion of the evidence, and that, if the statements are not admitted, the court will declare a mistrial unless a cautionary instruction would suffice.

United States v. Mayfield, 909 F.3d 956, 960 (8th Cir. 2018) (citing Bell, 573 F.2d at 1044). The district court in Mayfield properly followed the Bell procedure, where it "made its final determination as to admissibility near the end of the government's case but before the [statements] were played for the jury." Id.

"The procedures outlined in Bell are flexible and do not require reversal for failure to follow those procedures absent a showing of prejudice." United States v. McCracken, 110

F.3d 535, 542 (8th Cir. 1997). After a motion in limine seeking to exclude co-conspirator statements, a district court may "conditionally admit[] the evidence before ultimately determining [whether] [the] co-conspirator statements would be allowed pursuant to the procedures outlined in United States v. Bell." United States v. Ramirez-Martinez, 6 F.4th 859, 865 (8th Cir. 2021). Defense counsel will have to object at trial particularly if he believes that a government agent is attempting to introduce co-conspirator hearsay or if he believes the requirements of Bell are not met. High Wolf's motion in limine to prohibit co-conspirator statements, Doc. 29, is granted in part and denied in part.

**2. Motion to Prohibit Prior Bad Acts**

High Wolf next seeks to prohibit introduction of his criminal record and other prior bad acts. Docs. 30, 48. The United States has not filed a Rule 404(b) notice in this case. At the pretrial conference and motion hearing, High Wolf's counsel expressed concern about the United States presenting information about High Wolf allegedly having shot a dog, threatening the Ogalala Sioux Tribe attorney general, and assaulting another inmate. The United States responded that it did not intend to introduce evidence of such behavior. Rule 404(b) "prohibits the use of evidence of a defendant's other crimes, wrongs, or bad acts to prove the character of a person in order to show action in conformity therewith[,] [b]ut the rule permits the admission of such evidence to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.'" United States v. Halk, 634 F.3d 482, 486 (8th Cir. 2011) (citing and quoting Fed. R. Evid. 404(b); citing United States v. Trogdon, 575 F.3d 762, 766 (8th Cir. 2009); United States v. Oaks, 606 F.3d 530, 538 (8th Cir. 2010)). The motion in limine is granted to exclude the subjects that High Wolf's counsel feared as Rule 404(b) evidence unless High Wolf's testimony or case somehow opens the door to such evidence.

"Under Rule 609(a), convictions may be used to attack a witness's character for truthfulness if: (1) subject to Rule 403, the conviction is punishable by more than one year in prison; or (2) the crime's elements required proving 'a dishonest act or false statement.'" United States v. Stoltz, 683 F.3d 934, 938–39 (8th Cir. 2012) (quoting Fed. R. Evid. 609(a)). However, "'if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[,]' then the conviction is admissible only if (1) its probative value substantially outweighs its prejudicial effect; and (2) the proponent gives the adverse party written notice of the intent to use the conviction." Id. (quoting Fed. R. Evid. 609(b)). For convictions to be admissible against the defendant in a criminal case, a Rule 403 balancing must occur under Rule 609(a)(1), though crimes involving "a dishonest act or false statement" are admissible under Rule 609(a)(2).

The United States gave notice under Rule 609(a) of intent to introduce High Wolf's conviction in federal court in 2015 of conspiracy to distribute a controlled substance. Doc. 39. Very recently, the United States filed an Information Pursuant to 21 U.S.C. § 851(a) and Notice, Doc. 60, to seek a sentence enhancement based on the 2015 felony federal conspiracy to distribute conviction. The United States Court of Appeals for the Eighth Circuit has made such an enhancement a jury question, notwithstanding § 853(d)(1) language suggesting it is a decision of the court. United States v. Evans, 175 F.4th 950 (8th Cir. 2026).

This Court will have to rule on admission of that conviction until it is informed of whether High Wolf testifies in his case in chief. If High Wolf does not testify or if this Court excludes mention of the conviction during High Wolf's testimony, then this Court will treat trial on the § 851 Information like it would a forfeiture allegation– if there is a guilty verdict, the jury will be retained, hear evidence of the 2015 conviction, and receive instruction to reach a verdict on the existence or non-existence of the predicate conviction.

### 3. High Wolf's Motion to Prohibit reference to Gang Affiliation

High Wolf's next motion in limine seeks to prohibit reference to High Wolf's possible gang affiliation, particularly in reference to the "Wild Boyz" and a documentary that aired on the History Channel's Gangland series called "Wild Boyz: The Street Gangs of Pine Ridge in America." Doc. 31. The United States does not oppose the motion, unless High Wolf's case opens the door to this topic. This motion is granted with one caveat.

The Eight Circuit's "concern under Fed. R. Evid. 403 is that the relevance of gang related evidence not be overwhelmed by the risk that the jury will rest a guilty verdict solely on a defendant's gang affiliation." United States v. Ellison, 616 F.3d 829, 834 (8th Cir. 2010). "[G]ang-related evidence is often admissible where the defendant is a gang member himself, the issues in the case concern the mere fact of a defendant's gang membership rather than sanctioning a wide ranging inquiry into the generic criminality and violent dispositions of gangs, and the evidence is generally an unavoidable incident of presenting other permissible evidence." United States v. Gaines, 859 F.3d 1128, 1131 (8th Cir. 2017) (cleaned up and citation omitted). In United States v. Roark, 924 F.2d 1426, 1434 (8th Cir. 1991), the Eighth Circuit reversed a defendant's conviction where "the government's attempt to tie [the defendant's] guilt directly to his association with the Hells Angels Motorcycle Club," which the panel described as "the entire theme of the trial," "constitute[d] reversible error." "The government cannot [. . .] in its case-in-chief, introduce evidence of [a defendant's] unsavory character merely to show that he is a bad person and thus more likely to have committed the crime." Id. However, the Eighth Circuit has upheld the admission of gang-related evidence where "[t]he evidence proved each defendant's role in the conspiracy and individual criminal conduct." United States v. Franklin, 177 F.4th 915, 930 (8th Cir. 2026).

Some of the United States' prospective witnesses are alleged co-conspirators. If these

co-conspirators know High Wolf through gang involvement, or the methamphetamine conspiracy alleged here was part of gang activities, or if there is witness testimony about connection with High Wolf through a gang, this Court will not declare a mistrial, but likely will address the topic through a limiting instruction. However, the motion is otherwise granted.

**4. High Wolf's Motion Regarding Truthfulness of Cooperating Witnesses**

High Wolf's next motion in limine seeks to prohibit the United States or its witnesses from "introducing, eliciting or arguing that:

> (1) a witness can only get a deal from the Government if it provides truthful testimony; (2) the Government is the entity that determines whether a witness has provided truthful information; (3) truthfulness is a condition of the Government to receive immunity, plea agreement, or a reduced sentence; (4) the Government has independently verified the veracity of the witness' testimony; or (5) otherwise suggest the Government has exercised some truthfulness gatekeeper function prior to the witness taking the stand."

Doc. 32 at 1. At the pretrial conference and motion hearing, however, High Wolf's counsel argued against this motion as one for disallowing vouching or bolstering. The United States resisted the motion as written, but agreed that it would not vouch for or improperly bolster such testimony. Improper vouching may occur when the government expresses a personal opinion about credibility, implies a guarantee of truthfulness, or implies it knows something the jury does not. United States v. Roundtree, 534 F.3d 879, 880 (8th Cir. 2008). Prosecutors are not permitted to suggest or imply during closing arguments that they have the ability to determine whether a witness was lying or telling the truth, that they only got the deal if they were truthful, or that the plea agreement forced or ensured that the witness was truthful. See United States v. Sigillito, 759 F.3d 913, 932 (8th Cir. 2014).

Judge Theeler properly granted this motion in part and denied this motion in part to prohibit counsel vouching for any witness but to allow testimony regarding the existence and terms of plea agreements under which a witness's understanding of what the witness must do

to obtain a sentence reduction.

**5. High Wolf's Motion to Prohibit Evidence of His Statement**

High Wolf moves this Court in limine to prohibit the government, "or any of its witnesses, from bringing before the jury any purported statements made by High Wolf in an interview with Special Agent Melvin Rossman and Special Agent Brian Healy on or about October 16, 2025." Doc. 49 at 1. This interview was audio recorded. Agent Rossman prepared a written report about this interview, but the audio recording of the interview was inadvertently destroyed or lost. High Wolf argues that it is prejudicial to him to have an agent testify about his statements when an agent lost the recording. Both counsel at the pretrial conference seemed to recognize that the recording was deleted by accident and not intentionally or in bad faith.

High Wolf argues that under Fed. R. Evid. 1002, the Best Evidence Rule, his statements should be excluded from evidence. Fed. R. Evid. 1002 states that "an original recording is required in order to prove its content unless these rules or a federal statute provide otherwise." Fed. R. Evid. 1002 (citation modified). However, the advisory committee notes elucidate that "[a]pplication of the rule requires a resolution of the question whether contents are sought to be proved. Thus an event may be proved by nondocumentary evidence, even though a written record [or recording] of it was made. If, however, the event is sought to be proved by the written record [or recording], the rule applies." Id. Thus, the rule applies only when a party seeks to prove the contents of the writing, recording, or photograph through the item alone. If an independent source has personal knowledge or can prove the contents without reliance on the item or medium, the rule does not apply. See United States v. Onyenso, 615 F. App'x 734, 737 n.3 (3d Cir. 2015) ("Rule 1002 is not violated by the testimony of a witness who has personal knowledge of the contents of a destroyed writing."); D'Angelo v. United

States, 456 F. Supp. 127, 133 (D. Del. 1978) ("The rule is not applicable when a witness testifies from [p]ersonal knowledge of the matter, even though the same information is contained in a writing." aff'd, 605 F.2d 1194 (3d Cir. 1979).

Under Fed. R. Evid. 801(d)(2)(A), a party's statement offered as evidence against that party is not hearsay. That rule allows testimony from the agent or agents who questioned High Wolf about what High Wolf said notwithstanding Rule 1002. High Wolf can have agents testify about–or can provide testimony about–other statements he made during the interview that in fairness ought to be considered. Fed. R. Evid. 106. Agent Rossman has personal knowledge of High Wolf's statements during the interview. If the recording had been intentionally destroyed, then the admission of High Wolf's statements would be troublesome. However, the destruction of the digital preservation of the interview audio was unintentional.

High Wolf also claims that he is unable to verify the contents of the interview with the recording unavailable, and as such its loss is prejudicial to him. Doc. 49 at 3. But High Wolf himself was at the interview, has a summary of the interview written by the agent shortly afterwards, and can assist his counsel to cross examine witnesses about what happened in the interview. High Wolf, if he chooses, can testify about what was said in the interview as well.

This analysis parallels what Judge Theeler said on the record in denying the motion in limine. High Wolf has filed a motion to reconsider, Doc. 59, seeking a different ruling. Both the motion in limine to exclude defendant's statement, Doc. 49, and the motion to reconsider, Doc. 59 are denied.

**6. Defendant's Motion to Exclude Result of Drug Test**

Defendant moved to exclude evidence of the test result of a green Crown Royal bag and its contents allegedly found in his possession. Doc. 50. The United States disclosed to

High Wolf the lab results from testing on October 24, 2025, but did not timely file its Notice of Expert Witness, filing it on July 28, 2026, the day it received defendant's motion in limine. Doc. 52. High Wolf then objected to the late notice. Doc 54. Judge Theeler discussed this situation during the motion hearing and granted High Wolf's request to continue the trial for two weeks as a result of the late expert disclosure.

High Wolf has filed a motion to reconsider Judge Theeler's ruling. Doc. 59. High Wolf has known about the test results since October 24, 2025, and has received a two week continuance of the trial to have the normal amount of time to consider and refute an expert witness disclosure. The motions to exclude result of drug test, Doc. 50, and to reconsider, Doc. 59, are denied.

**C. Defendant's Motion in Limine on Cell Phone Extraction**

After the pretrial conference and motion hearing, High Wolf filed a motion in limine to preclude evidence from a cell phone extraction, Doc. 58. High Wolf argues that the phone from which the extraction occurred cannot be attributed to High Wolf.

Under Rule 901, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). A witness with knowledge of what an item is may authenticate the evidence. Fed. R. Evid. 901(b)(1). "Once the proponent satisfies the threshold requirements, questions of authenticity become fact questions for the jury." United States v. Walker, 168 F.4th 533, 538 (8th Cir. 2026). In United States v. Wise, 74 F.4th 953 (8th Cir. 2023), the appellant challenged the admission of a burner phone that he claimed the government had failed to authenticate where the information in the phone self-identified as a person with the same first name as the appellant, contained a picture of his bank card, had texts with his sister, and had been found in his car during a traffic stop.

74 F.4th at 956. The Eighth Circuit concluded the district court did not abuse its discretion in finding there was sufficient evidence to authenticate the phone. Id. (citing United States v. Lamm, 5 F.4th 942, 946–47 (8th Cir. 2021) (stating evidence is sufficiently authenticated when the proponent provides a rational basis demonstrating the evidence is what it is asserted to be)).

This Court has insufficient information at this time to rule on whether sufficient evidence exists that the cell phone from which the extraction occurred belonged to or was used by High Wolf. There is a pretrial conference that remains set for 8:30 a.m. on Tuesday, August 18, 2026, when counsel may argue the motion and ruling is reserved until then.

## III. Conclusion

Therefore, it is hereby

ORDERED that the United States' Motions in Limine, Doc. 40, are granted to the extent stated herein. It is further

ORDERED that the Defendant's Motions in Limine, Doc. 29, 30, 31, 32, 48, 49, and 50, are granted in part and denied in part to the extent stated herein. It is further

ORDERED that Defendant's Motion to Reconsider, Doc. 59, is denied. It is finally

ORDERED that ruling on Defendant's Motion to Exclude Cell Phone Extraction Evidence is reserved until the pretrial conference on Tuesday, August 18, 2026.

DATED this 14th day of August, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE